Orland J. Ridenour v. Commissioner.
Ridenour v. Commissioner
Docket No. 53194.
United States Tax Court
T.C. Memo 1957-126; 1957 Tax Ct. Memo LEXIS 123; 16 T.C.M. (CCH) 538; T.C.M. (RIA) 57126; July 11, 1957
*123 During each of five years, petitioner received payments from three corporations which made the payments for the purpose of obtaining assistance in their efforts to obtain reduction and relief from the intangible personal property tax imposed by two counties in New Jersey. Petitioner paid some of the payments to others for their work on the problems. He did not include in his taxable income for each year in his returns the balance of the payments. (1) Held, that the respondent has established by clear and convincing evidence that petitioner filed a false and fraudulent return for each of the five years involved, and that, therefore, the deficiencies are not barred, section 276(a), 1939 Code. (2) Held, that petitioner has failed to prove that the net amounts which he received in each year from the corporations were intended and used for political party purposes or political party contributions, and that upon the entire record they constituted taxable income under section 22(a), 1939 Code. (3) Held, that respondent has proved that part of the deficiency for each year was due to fraud with intent to evade tax, section 293(b), 1939 Code. Marvin W. Lewis, Esq., for the petitioner. Lee *124 C. Smith, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income tax and 50 per cent additions to the deficiencies under section 293(b), 1939 Code, for the taxable years 1939 through 1943 as follows: Year
Deficiency
Section 293(b)
1939
$ 770.24
$ 385.12
1940
151.66
75.83
1941
2,328.96
1,164.48
1942
3,064.42
1,532.21
1943
2,724.00
2,357.83 Some of the respondent's determinations are not contested. The issues presented are as follows: (1) Whether petitioner filed a false or fraudulent return for each of the years 1939-1943, inclusive, so that the deficiencies are not barred by the statute of limitations, section 276(a), 1939 Code. (2) Whether petitioner received income in each of the years involved which he failed to report in his income tax returns. (3) Whether part of each deficiency is due to fraud with intent to evade tax, section 293(b). Findings of Fact Petitioner is now a resident of Homestead, Florida, which is near Miami. He moved to Miami in March 1944. During the years 1939-1943, inclusive, he was a resident of Newark, New Jersey. He timely filed individual income tax returns for the calendar years 1939-1943, inclusive, with *125 the collector of internal revenue for the fifth district of New Jersey. The statutory deficiency notice which gives rise to this case was mailed on March 4, 1954. During the years 1939-1943, petitioner was married and he maintained a family residence for himself and his wife at 47 Lincoln Park, Newark, New Jersey. From September 10, 1936, to March 31, 1944, petitioner was employed by the city of Newark, New Jersey, as director of the Bureau of Purchases. During the last three or four years of employment by the city of Newark, he also held the office of industrial engineer of Newark. His salary was $5,000 per year during the above period until about July 1943, when it was increased to $6,000 per year. Petitioner was born on October 16, 1883. Accordingly, he was close to 53 years of age when he was first employed by the city of Newark, and he was over 61 years old when that employment ended. At the time of the trial of this case he was 73 years old. He now owns and he has been operating an avocado and citrus grove at Homestead, Florida. Petitioner's schooling ended when he graduated from high school. He is not a graduate engineer. He is not an accountant, and he has not had any professional *126 training. From at least 1938 until he left Newark in March 1944, petitioner was treasurer for the ninth ward of Newark in the Democratic political organization. In his individual income tax returns for the taxable years 1939-1943, inclusive, petitioner reported net income in the amounts set forth below. The Commissioner determined that petitioner's correct taxable income for each year was the amount set forth below: Net Income
Correct Taxable
Year
Reported
Net Income
1939
$ 4,449.17
$14,449.17
1940
5,087.90
7,587.90
1941
4,072.44
14,782.12
1942
3,143.58
13,694.06
1943
3,584.33
12,310.44
$20,337.42
$62,823.69
The Commissioner determined that petitioner received income in each of the years involved, which he did not report in his income tax returns, in the amounts set forth below: Amount of
Year
Unreported Income
1939
$10,000.00
1940
2,500.00
1941
10,500.00
1942
9,750.00
1943
11,833.32
In the statement attached to the deficiency notice, the Commissioner explained his determinations, in general, in the following way: He determined that petitioner received fees from George A. Fuller Company, United States Realty and Improvement Company, and The Sperry & Hutchinson Co., for services as a "tax consultant"; that the fees *127 amounted to $10,000 in 1939; $2,500 in 1940; $11,250 in 1941; $10,000 in 1942; and $12,500 in 1943; that petitioner incurred and paid expenses of $750 in 1941; $250 in 1942; and $666.68 in 1943; and that petitioner retained all of the fees less his expenses. Petitioner had some arrangement with each of the corporations named above whereby they made disbursements to him by check, periodically, during the years 1939-1943, inclusive, in payment of invoices submitted by petitioner. The checks were made payable to "Orland J. Ridenour & Co." Petitioner endorsed each of the checks "Orland J. Ridenour Company," and with his personal endorsement, "Orland J. Ridenour," and he deposited each check in a personal bank account. During 1939, 1941, and 1942, petitioner received checks from Fuller Co. and from U.S. Realty Co. in the total amounts of $10,000, $11,250, and $10,000, respectively. In 1940, he received $2,500 from Sperry & Hutchinson Company (S. & H. Co); and during 1943, he received $12,500-from the three corporations. Petitioner received the total sum of $46,250 from the three corporations during the years 1939-1943, inclusive. The following schedules show the dates of Ridenour's invoices *128 to each of the corporations, the dates and the amounts of the checks given by each in payment of the invoices; and the total amount received by petitioner in each of the years involved: Date of R. & Co.
Date of
Invoice
Check
Amount
George A. Fuller Company
4/ 1/39
4/ 3/39
$ 1,500
8/ 9/39
8/17/49
5,000
2/11/41
3/11/41
7,500
2/11/42
4/ 1/42
7,500
4/ 6/43
5/ 7/43
7,500
$29,000
United States Realty and Improvement
Company
Unknown
4/ 4/39
$ 1,000
8/ 9/39
8/10/39
2,500
2/11/41
3/ 6/41
3,750
2/11/42
4/ 1/42
2,500
4/ 6/43
5/ 5/43
2,500
$12,250
Sperry & Hutchinson Company
8/15/40
8/21/40
$ 2,500
1/15/43
1/19/43
2,500
$ 5,000
Total Payments Each Year
Payor
1939
1940
1941
1942
1943
Totals
Fuller Co.
$ 6,500 $0
$ 7,500
$ 7,500
$ 7,500
$29,000
Realty Co.
3,500
0
3,750
2,500
2,500
12,250
S. & H. Co.
0
2,500
0
0
2,500
5,000
$10,000
$ 2,500
$11,250
$10,000
$12,500
$46,250
Petitioner did not include in his gross income in his return for each of the years involved any of the amounts received from the above-named corporations. Respondent included the following amounts in petitioner's taxable income for each of the years in question, after allowing expenses of $750 in 1941, $250 in 1942, and $666.68 in 1943: Amounts Included in
Year
Taxable Income
1939
$10,000.00
1940
2,500.00
1941
10,500.00
1942
9,750.00
1943
11,833.32
$44,583.32
During *129 the years 1939 to 1943, inclusive, petitioner maintained a checking account in the Lincoln National Bank, and savings accounts in the Lincoln National Bank, the Franklin Savings Institution, the United States Savings Bank, and the Howard Savings Institution, all of which banks are in Newark, New Jersey. All of the savings accounts were closed when petitioner moved to Florida in 1944. The total amounts of the year-end balances in petitioner's bank accounts at the end of each of the years, 1938-1943, inclusive, were as follows: Year ended
Total balances in
December 31
bank accounts
1938
$ 2,825.00 *
1939
9,327.96 *
1940
11,597.19
1941
16,448.73
1942
21,881.65
1943
29,690.23
During each of the years 1941, 1942, and 1943, the balances in all of petitioner's bank accounts increased in the total amounts set forth below: Year
Increase
1941
$4,851.54
1942
5,432.92
1943
7,808.58
Petitioner's living expenses amounted to about $5,000 during each of the years involved. Petitioner purchased a new Packard automobile in 1941 for about $3,100, cash. Most of the checks drawn on petitioner's checking account were in amounts of less than $100, and they were made payable to named payees. *130 Personal expenses were paid out of the checking account. Most of the deposits in petitioner's bank accounts were deposits of checks. His pay checks from the city of Newark were deposited in his bank accounts. On April 6, 1942, petitioner withdrew from his checking account two counter checks in the amounts of $3,750 and $5,000, each, which were made payable to the Lincoln National Bank. The first check was used for the purchase of a Series E United States Savings Bond, and the second check was used to open a savings account in the Lincoln National Bank in petitioner's name. In October and November 1943, petitioner closed two brokerage accounts and deposited the proceeds in the amount of $9,359.80 in the Lincoln National Bank. In 1938, Essex County, New Jersey, in which Newark is situated, and Hudson County, New Jersey, in which Jersey City is situated, proposed to assess a substantial intangible personal property tax on all corporations either incorporated in the State of New Jersey or having offices therein. In excess of 250 corporations were subject to this tax. As proposed, such tax would have amounted to about $4,000,000,000. The three above-named corporations were subject to the *131 intangible personal property tax; each had an office in Jersey City as well as in New York City. Edwin J. Beinecke was chairman of the board of directors and president of all three of these corporations. Fred M. Sanders was an executive vice-president and director of all three of these corporations. Sanders died in 1945. Petitioner had known Beinecke since 1913, both having been members of the Masonic Order. Petitioner approached officers of each of the three corporations at their offices in New York City during 1938, and offered his services in connection with proceedings in New Jersey in connection with the intangible personal property tax. The officers contacted Beinecke, who was then abroad, and with his approval, they engaged petitioner to perform services. Petitioner then entered into an oral agreement with James E. Mullaney, an accountant practicing in Newark; with Walter P. Reilly, an attorney practicing in Newark; and with John C. Flanigan, an attorney practicing in Jersey City. It was agreed that Mullaney, Reilly, and Flanigan were to perform services for the three corporations in connection with the intangible personal property tax which Essex and Hudson Counties proposed. *132 Under the agreement, all fees received from the three corporations were to be shared equally among petitioner, Mullaney, Reilly, and Flanigan, i.e., each was to receive one-fourth. Mullaney died prior to the trial of this case. Petitioner introduced Mullaney, Reilly, and Flanigan to officers of Fuller Co., U.S. Realty Co., and S. & H. Co. During the period 1939 to 1943, inclusive, Mullaney, Reilly, and Flanigan performed various services for the three corporations in connection with the proposed tax, such as appearing before local tax boards on behalf of the corporations and preparing briefs. The intangible personal property tax was eventually settled by all of the corporations subject to it, including Fuller Co., U.S. Realty Co., and S. & H. Co., for two mills on the dollar; the settlement became final in 1946. Petitioner had billheads printed bearing the name, "Orland J. Ridenour & Co., Industrial Engineers," together with his home address and home telephone number. He submitted invoices to the three corporations, named above, on these billheads, and the corporations issued the checks referred to above, made payable to "Orland J. Ridenour Company" in the amounts stated in the invoices. *133 The invoices stated that they were for tax consultation services regarding hearings before various tax boards in New Jersey. The first check received by petitioner, a check from Fuller Co., dated April 3, 1939, was deposited in petitioner's personal savings account in the Howard Savings Institution. All subsequent checks were deposited in his personal checking account in the Lincoln National Bank. Petitioner paid Reilly, Flanigan, and Mullaney, during the years involved, various amounts as reimbursement for out-of-pocket expenses incurred by them in their work relating to the intangible tax for the three corporations, as follows: 1941
1942
1943
Reilly $250
$333.34
Flanigan
250
Mullaney
250 $250
333.34
Totals $750 $250
$666.68 He did not turn over to Reilly, Flanigan, or Mullaney any other part of the amounts which he received from the three corporations. He kept the remainder. Unreported income from interest on savings accounts in banks located in Newark, New Jersey, was received by the petitioner during the years 1941, 1942, and 1943, as follows: Account No.
Name of Bank
1941
1942
1943
752958
Howard Savings Institution
$ 50.12
$ 50.18
$ 50.15
153247
United States Savings Bank
33.30
50.00
50.00
93211
Franklin Savings Institution
36.31
50.18
50.30
21136
Lincoln National Bank
8.33
50.12
Total
$119.73
$158.69
$200.57
*134 At the end of each of the years 1941, 1942, and 1943, the petitioner withdrew the interest accumulated in each of the above-mentioned bank accounts in the amounts shown in the above schedule. The petitioner concedes that his taxable income for each of the years 1941, 1942, and 1943 should be increased by interest income in the amounts shown in the above schedule. The petitioner received interest from capital gain in the year 1943 which was not reported in his income tax return for 1943 in the amount of $359.80, which petitioner concedes is properly includable in taxable income for the year 1943. The petitioner does not contest the disallowance of deductions for the years 1941, 1942, and 1943 in the amounts of $89.95, $641.79 and $792.68, respectively. Petitioner filed false and fraudulent returns for each of the years 1939-1943, inclusive. Part of the deficiency for each of the years 1939-1943, inclusive, was due to fraud with intent to evade tax. The stipulated facts are found as stipulated; the stipulation is incorporated herein by this reference. Opinion HARRON, Judge: The first question is whether petitioner filed a false or fraudulent return with intent to evade tax for each of *135 the years 1939-1943, inclusive. If that question is decided for the respondent, it follows that the deficiency, under section 276(a), 1939 Code, is not barred, and, also, a second question must be considered, whether any part of a deficiency is due to fraud with intent to evade tax. Under both of these questions the respondent has the burden of proof. While the respondent has the burden of proving that a false or fraudulent return was filed for each of the years before us, if he is successful in establishing that fact the bar of the statute of limitations against respondent's assertion of a claim for a deficiency in tax is removed and the presumption of correctness of his determination that in each year petitioner received income which he failed to report "immediately revives and must be overcome by positive evidence on the part of the petitioner. The statute of limitations does not shift the burden of proof; it merely raises a bar to the assertion by the respondent of any claim for a deficiency in tax; and once that bar has been removed by proof of fraud, we are where we were before." ; , certiorari *136 denied ; , certiorari denied . Once the respondent has made a prima facie case, the burden of going forward shifts to the petitioner. ; ., Leon Papineau, 28 T.C. - (April 17, 1957). In meeting his burden of proof, respondent is required to establish by clear and convincing evidence that for each year petitioner omitted a substantial amount of income from his return, but he is not required to prove the precise amounts of unreported taxable income received by petitioner. ; , certiorari denied . Petitioner admits that he received in each of the years 1939-1943, inclusive, payments from one or more of the three corporations involved in the amounts set forth in the Findings of Fact, but he denies that any part of the sums received in each year constituted income. He asserts that each coporation made the payments in question to him in each year as political contributions in the belief that such contributions would be of assistance *137 in obtaining favorable settlements of or relief from the intangible personal property taxes which the counties of Essex and Hudson had assessed; and he has testified that except for the amounts which he paid to Reilly, Flanigan, and Mullaney in the three years 1941-1943, inclusive, all of the funds which he received were disbursed for political purposes in accordance with instructions which he received by telephone from the office of the then mayor of Jersey City. Among the witnesses who testified for the respondent were Christian R. Burmeister, treasurer of Fuller Co., and formerly comptroller of U.S. Realty Co.; Walter E. Eckert, treasurer of S. & H. Co.; and John C. Flanigan, an attorney in Jersey City. Burmeister and Eckert testified that the payments in question, in each year, had been made to petitioner for services rendered by Orland J. Ridenour & Co. in connection with the intangible personal property taxes assessed on the corporations with which they were associated. Flanigan testified that he, James Mullaney, an accountant, and Walter Reilly, an attorney in Newark, were associated with petitioner in working on the particular tax matters for the three corporations before local *138 tax boards. Flanigan testified, further, that although there had been an oral understanding with petitioner, in the beginning, that all of the receipts from the three corporations would be divided equally among petitioner, Flanigan, Reilly, and Mullaney, the latter three individuals were never able to get petitioner to work out such settlement; that all they received were the amounts which have been set forth in the Findings of Fact; that after Ridenour went to Florida, they called to see Beinecke, who was associated with the three corporations, about payments which they, individually, had expected to receive; that they then were told by Beinecke that Ridenour had been paid over $40,000 during the entire period; and that they were surprised to obtain that information. There is in evidence a bill from Flanigan to Ridenour, dated March 20, 1941, for $250, for tax consultation services including legal and other expenses in connection with tax hearings before the tax boards of Jersey City, Newark, Hudson County, Essex County, and the New Jersey State Board of Tax Appeals, in connection with tax assessment matters for the years 1937-1941, inclusive, in the cases of Fuller Co., U.S. Realty *139 Co., and S. & H. Co. Respondent called William H. Kelly who was the manager of the Essex County Democratic Committee during the years in question. He testified that he did not know of any political contributions or disbursements of Ridenour during any of the years in question. Respondent introduced evidence relating to petitioner's various bank accounts for each year which shows that the year-end balances increased in 1941, 1942, and 1943. Such evidence does not show any withdrawals in large amounts in any year such as might indicate disbursements of large amounts by petitioner which could serve to substantiate petitioner's explanation. Petitioner's living expenses amounted to about $5,000 during each year; for each year, he reported net income in each return of less than or close to $5,000. Thus it is evident that increases in bank account balances must have been the result of the receipt of other funds than petitioner's salary which he earned through regular employment. Petitioner has not explained other sources of funds which, evidently, he had. Furthermore, not only were there increases in bank account balances, but it has been shown by the respondent that petitioner made some *140 fairly substantial expenditures, as follows: He bought an automobile in 1941 for $3,100, paid in cash. In 1942, petitioner expended $3,750 for a United States Savings Bond. He had two brokerage accounts which he closed in 1943. With respect to the brokerage accounts, there is no evidence, and, therefore, we do not know what funds petitioner may have devoted to those accounts or what amounts he may have withdrawn from them while they were active and before they were closed. However that may be, petitioner withdrew from the brokerage accounts $9,359.80 when they were closed. Petitioner called no witnesses; he presented a negligible amount of proof through documents; and he relied upon his own testimony. His testimony is not supported by the testimony of others or by any other kind of corroboration. Petitioner failed to establish by independent proof that he was merely a conduit through which money passed from the corporations to political organizations or to political uses. Respondent has established by substantial evidence that petitioner received a considerable amount of money in each year, during five years, which the payors disbursed to him for services in connection with the assessments *141 of the intangible personal property tax. He made a prima facie case that in each year petitioner received large amounts of income which he failed to report for income tax. The receipts were too large and too continuous to have been omitted from petitioner's tax returns through carelessness or inadvertence. It is concluded that the respondent proved by clear and convincing evidence that petitioner filed a false and fraudulent return for each of the years involved with intent to evade tax, and that, therefore, the deficiencies for all of the years are not barred. ; , certiorari denied ; Adverting now to the issue whether petitioner received income in each year in the amount determined by the respondent, it is necessary to consider whether petitioner has succeeded in meeting his burden of proof. Petitioner did not produce any records of his alleged disbursements of the funds in question in any year; nor did he call any witness from any of the corporations who made the periodic payments to him; nor did he call any witness connected with any political organization or *142 engaged in any political activity during any of the years. If it had been the purpose of the officers of the three payor corporations who approved the continuous payments to petitioner that all or part of those payments were to be used for political purposes, it seems reasonable to believe that all or some of such individuals could have been called by petitioner to testify in this case. And if petitioner's story were true that he continuously or from time to time during the five years distributed the funds in issue to individuals for political purposes or uses, it seems to be reasonable to expect that he could have called some witness or produced some records to establish the truth of his explanation. From petitioner's failure to call any witnesses to corroborate his testimony it must be inferred that the testimony of such witnesses would have been unfavorable to petitioner. . Petitioner testified that he kept rough records, accurate to within $100, of "political" receipts and disbursements; that he gave all his records to revenue agents at the time their investigation commenced; that, later, the records were returned to him and that he *143 lost them. Petitioner's only explanation for his loss of the records was, "They were probably thrown in the wastebasket." Such destruction of records, itself, militates against petitioner. , affd. . Furthermore, the testimony of the revenue agent who examined those records shows that if they could have been produced they would not have established that petitioner disbursed in any year all or part of the funds he received for political purposes, and they would not have served to corroborate petitioner's testimony. The record leaves us with the belief that petitioner has not made a frank and forthright explanation of what he did with the funds here involved, and upon the entire record we are obliged not to believe his assertions. We are not required to accept petitioner's uncorroborated testimony, particularly in view of the evidence produced by the respondent which is in opposition to petitioner's explanations. Cf. , certiorari denied . We have examined and reexamined the record in an effort to find some support for petitioner's testimony, but we have been unable to *144 find any. We have analyzed the transcripts of his bank records, which were placed in evidence, in an effort to find such support, but without success. Under the circumstances, we have no alternative but to conclude that petitioner has failed to overcome the prima facie correctness of the respondent's determination for each year. Also, the only inference which can be drawn from the entire record is that petitioner either retained all or part of the funds which he received from the three corporations in each year, or he devoted them to his personal use except for the relatively small amounts which he paid to Reilly, Mullaney, and Flanigan. It is held that the net amounts which petitioner received in each year constituted taxable income. The respondent's determinations to that effect are sustained. A case which is in some respects comparable to this case is , affirmed on other grounds , certiorari denied . In the Reichert case (page 1038) we held, under one issue, that a payment to the taxpayer was not paid as a political party contribution but was received by him as recompense for removing obstacles to the renewal of a liquor *145 license. We noted that the payment was not made in an election year and was not reported to a political party organization. In this case, petitioner has not established that he either received the funds in question or disbursed them at times of elections, or that he reported any of the several receipts to any political party organization. On the other hand, there is evidence that he obtained the services of the accountant and the two lawyers; that he maintained contacts with representatives of the three corporations; that he had the invoices bearing the name, "Orland J. Ridenour & Co.," printed; and that he prepared the invoices for all of the charges and forwarded them to the corporations. Such evidence strongly indicates that petitioner performed some services for the three corporations. Upon the entire record and upon petitioner's failure to present credible evidence that he did not retain or use any of the funds but, instead, gave them to a political party organization, we must conclude that petitioner received the net amount of all of the payments as compensation for services, or for obtaining consideration by others of the claims of each corporation in its intangible personal *146 property tax problems. We have taken into account petitioner's testimony that he was treasurer of the ninth ward of Newark in the Democratic party political organization during the years 1938-1943, inclusive, and during 1944 until he moved to Florida. Of course, this circumstance is favorable to petitioner's claim that he turned over the funds he received from the corporations to himself as an officer of a political party organization. But he did not keep records, according to the testimony of the revenue agent who examined the records which have been lost, which showed that he put all or part of the receipts involved here into a political fund of the ninth ward of Newark; or that he recorded all or part of such receipts in any record which he kept of receipts of political contributions as the treasurer of the ninth ward of Newark; or that he recorded in his treasurer's records any of the alleged disbursements of the money received from the three corporations as political party disbursements or disbursements for political purposes. On the contrary, petitioner deposited all of the receipts, as he received them, in a personal bank account. There was no separation from his personal funds *147 of any of the receipts from the three corporations. Petitioner has failed to establish that any of the receipts in question were not, in any of the taxable years, compensation to him for some services which he rendered, or were not in some other respect income within the scope of section 22(a). William O'Dwyer, 28 T.C. - (June 24, 1957). The remaining question is whether all or part of each deficiency is due to fraud with intent to evade tax within section 293(b). In considering this question attention has been given to the principles that the intent to evade tax is a specific intent; that direct evidence of the specific intent is seldom available to prove fraud; that whether fraud existed must be determined from the surrounding circumstances, including the conduct of the taxpayer, ; and that the underreporting of income is not, in itself, evidence of fraud. Upon consideration of the entire record it is held that part of each deficiency was due to fraud with intent to evade tax. The respondent has fully borne his burden of proof under this issue. The deficiencies result chiefly from the repeated, continuous, and consistent failure of petitioner to include *148 in his reported taxable income for each year the amounts he received from the corporations; the amount of money which petitioner received in each year was substantial; petitioner commingled, in each year, such receipts with his personal funds in a bank account; and he did not maintain and retain adequate or accurate records of his receipts from the corporations. The receipts in each year were in large amounts and it is not reasonable to believe that petitioner overlooked the payments made to him when his income tax return for each year was prepared. We are convinced that petitioner knew that the payments to him were to compensate him for services of some sort which he rendered to each of the corporations. It is concluded that petitioner's omission from his taxable income for each year of the receipts in issue was willful and with intent to evade tax. The 50 per cent additions to the deficiencies determined by the respondent under section 293(b) are sustained. ; ; ; , affd. ; ; *149 Decision will be entered for the respondent. Footnotes
*. Not including checking account balances.↩